[Cite as *In re A.P.*, 2026-Ohio-2862.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

IN RE:                                          :
                                                         CASE NO. CA2025-12-011
A.P., et al.                                    :
                                                         <u>OPINION AND</u>
                                                :        <u>JUDGMENT ENTRY</u>
                                                         7/27/2026
                                                :

                                                :

                                                :


APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20253007; 20253008


Eric E. Marit, Preble County Prosecuting Attorney, and Sean Brinkman, Assistant Prosecuting Attorney, for appellee.

Father, pro se.


## **O P I N I O N**


**M. POWELL, J.**

{¶ 1} Appellant ("Father") appeals a decision of the Preble County Court of Common Pleas, Juvenile Division, directing him, the mother of his children ("Mother"),

and their two children to submit to psychological evaluations. Father represented himself in the proceedings below.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   Father and Mother are the parents of Alice (born in April 2016) and Bella (born in May 2020).[1] On May 6, 2025, Preble County Job and Family Services, Children Services Division ("the Agency"), filed complaints alleging that the children were dependent and seeking an order of protective supervision. Following a temporary disposition hearing, the children remained in their parents' custody, subject to the protective supervision of the Agency. On July 1, 2025, the children were adjudicated dependent. They remained in their parents' custody under the Agency's protective supervision.

{¶ 3}   At issue in this appeal is the family's case plan. The Agency held a meeting to develop a case plan, and both Father and Mother had the opportunity to provide input. A case plan was developed, which included the requirement that Father, Mother, and the children submit to psychological evaluations. Father, Mother, and the Agency signed the case plan on June 3, 2025. The Agency subsequently moved the juvenile court to approve the case plan, stating, "All parties agreed to the contents of the case plan and accordingly signed the case plan." The Agency's motion did not contain a certificate of service. On June 12, 2025, the juvenile court approved the case plan as follows: "The Court notes that there has been no written objections filed and all parties have signed in agreement with the case plan. The Case Plan is hereby APPROVED and JOURNALIZED and the Court notes all parties are to comply." The court's entry indicates that a copy was provided

---

1. To preserve the children's privacy, and for ease of reading, we refer to the children using fictitious names, rather than their initials.

to all parties, including the parents. The court's docket states, "Entry filed. Parties served approving case plan."

{¶ 4} On September 18, 2025, Father filed a Motion for Leave to Appeal/File a Delayed Appeal. The motion listed several difficult personal circumstances that prevented him from filing an appeal, claimed he did not know the case plan was a court order, and asserted that the "documentation" was mailed to him "after the 30 day appeal time on September 16, 2025." On September 18, 2025, the juvenile court issued an entry acknowledging receipt of Father's motion and holding, "This Court does not have the authority to grant the request to file an Appeal past timelines. The Court can, however, appoint counsel to assist in filing whatever relief may be available. Father and/or mother if desired, must file an affidavit of Indigency with this Court." No affidavit of indigency was filed with the trial court.

{¶ 5} As a result of Father's motion and the parents' refusal to obtain a psychological evaluation for themselves and the children, the Agency filed a motion on October 8, 2025, seeking a court order that Father, Mother, and the children submit to the psychological evaluations called for by the approved case plan. The Agency's motion stated that psychological evaluations were in the best interest of the children because they would help the children get the proper resources and be successful at school, and qualify the family for in-home services. On October 27, 2025, Father filed a six-page, handwritten motion "to quash or object to the order" for psychological evaluations. A hearing on the Agency's motion for a court order was held on October 29, 2025. The family's caseworker testified on behalf of the Agency. Father testified on his own behalf.

{¶ 6} Based upon her own observations and reports from school personnel, the caseworker recommended a psychological evaluation for both Alice and Bella. The caseworker testified that Alice is in fourth grade, has been diagnosed with autism through

the school, and is on an IEP and a reading intervention plan. Alice receives physical therapy, occupational therapy, speech therapy, and has a one-on-one aide. The caseworker testified that Alice struggles with boundaries and personal space during home visits. Based upon behaviors observed in the classroom, including Alice frequently arguing with her aide, Alice's teacher reported that Alice could achieve more academically but for her behaviors. The caseworker testified that a psychological evaluation would be in Alice's best interest because in the event Alice has a learning disability or developmental delay, the evaluation would provide additional support in school and resources at home. As an example, the caseworker spoke of Applied Behavioral Analysis, a therapy preferred by Father, the school, and the caseworker; however, a psychological evaluation is a prerequisite to commencing this particular therapy.

{¶ 7} The caseworker testified that Bella is in Kindergarten. Bella struggles with speech. The school is working on developing an IEP for Bella, and efforts are made to get her engaged in occupational therapy, physical therapy, and speech therapy. Bella's teacher reported concerns that Bella suffers from learning disabilities and emotional dysregulation, and that some of her behaviors are not developmentally appropriate. However, in the absence of a diagnosis, Bella is unable to use any support or resources. The caseworker testified that a psychological evaluation would be in Bella's interest because it would help the school develop an IEP for Bella, qualify Bella for services, and qualify the family for in-home services.

{¶ 8} The caseworker further stated that Father and Mother could benefit from submitting to psychological evaluations in light of Father's impulsive and erratic behavior, Mother's history of substance abuse, prior incidents of violating a safety plan, and previous referrals of the family to the Agency.

{¶ 9} Father testified he was opposed to psychological evaluations for the

children because he was concerned it would result in the children being "labeled" and foster a belief that something was wrong with them. Father further expressed concern that a label would pull the children away from class and slow their education. Father opined that submitting to a psychological evaluation was the equivalent of "going off the deep end" when alternatives should be considered and used first. Thus, Father suggested waiting for the completion of the children's IEPs, welcoming any strategies suggested by the school and any counseling and supporting services, and addressing any concerns by working with the children at home before determining whether psychological evaluations were necessary. Father asserted that the children were making significant progress in school.

{¶ 10} The record shows that during the redirect examination of the caseworker, Father sought to introduce into evidence a document that purported to be Alice's current IEP. However, the document was an incomplete IEP progress report and was not admitted. Subsequently, approximately 80 minutes into the hearing, Father sought a continuance to retain counsel. The juvenile court denied Father's motion to continue because the hearing was in progress, Father had repeatedly failed to retain an attorney, and he had repeatedly rebuffed the juvenile court's encouragement that Father apply for court-appointed counsel.

{¶ 11} The record also indicates that Father made three separate filings between the time the hearing was scheduled and the time it was held. Then, three weeks after the hearing, Father filed a combined motion to supplement the record with additional evidence and for discovery, and a motion for reconsideration and/or motion to stay court-ordered psychological evaluation. Stated otherwise, Father sought to supplement the evidentiary record with documents that were not offered or admitted during the hearing.

{¶ 12} On November 25, 2025, the juvenile court granted the Agency's motion for

- 5 -

psychological evaluations, thereby "confirm[ing] its prior order of psychological evaluations for [Father, Mother, and the children]" and warning the parents that "failure to complete the same as contained in the June 2025 case plan may result in Contempt of Court proceedings." Based upon the caseworker's testimony and observations, the juvenile court found that psychological evaluations were in the children's best interest because they may identify any necessary or beneficial services to the children. The court observed that "[n]ot having a diagnosis, if appropriate, and failing to provide the resulting services would be a disservice."

{¶ 13} The juvenile court also discussed Father's post-hearing filings, describing them as attempts to (1) discredit the Agency's evidence, (2) "supplement evidence taken at the hearing that should have been presented at the hearing and were not," and (3) ask the court to consider "less intrusive alternatives." The juvenile court held that Father had repeatedly chosen to represent himself, that although he was a pro se litigant, he would be held to the same standards as an attorney, and that the time to discredit the evidence provided by the Agency, submit evidence, and suggest less intrusive alternatives to a psychological evaluation was during the hearing. The court concluded its discussion of Father's post-hearing filings by stating, "The Court is sympathetic to the parents' position, but they cannot complain about not 'knowing how' to file motions and present evidence AND refuse to get counsel or be considered for the appointment of such at the same time."

{¶ 14} Father now appeals, pro se, raising five assignments of error. The first and second assignments of error will be considered together. We note that although the juvenile court ordered the parents and children to submit to psychological evaluations, Father's appeal mainly challenges the children's psychological evaluations. We also note that Father's pro se brief is at times difficult to comprehend, and that it improperly directs

this court to Father's App.R. 9(C) Statement of Evidence and Proceedings, which was stricken by the juvenile court on March 3, 2026, for failure to comply with App.R. 9(C).

## II. LAW AND ANALYSIS

{¶ 15} Before we consider Father's assignments of error, we first address his acknowledged reliance on artificial intelligence in drafting his brief. We note that several case citations in Father's brief were erroneous in that they led to miscited cases and cases that exist but stand for different legal propositions than what is represented. We remind all parties and attorneys who may appear before our court that false citations not only will be disregarded by this court, but may result in sanctions. *Chasteen v. Lynch*, 2024-Ohio-5857, ¶ 50 (12th Dist.). App.R. 16(A)(7) requires that an appellant set forth "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which the appellant relies." Father's status as a pro se litigant does not relieve him of his obligation to comply with the appellate rules because it is well established that pro se litigants are held to the same standard as all other litigants. *Hunter-Bey v. Cleveland Law Dept.*, 2026-Ohio-1869, ¶ 8 (8th Dist.). Regardless, in the interest of justice, we are ruling on the merits of Father's appeal. We have disregarded every case cited in Father's brief other than those we have determined were accurately cited and in some way support the proposition of law set forth by Father. *Chasteen* at ¶ 50.

{¶ 16} Assignment of Error No. 1:

THE JUVENILE COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS BY ENFORCING A JUNE 12, 2025 CASE PLAN WITHOUT PROPER NOTICE OR SERVICE, AND BY DENYING APPELLANT A MEANINGFUL OPPORTUNITY TO CHALLENGE THE PLAN UPON RECEIPT.

{¶ 17} Assignment of Error No. 2:

> THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY PROHIBITING APPELLANT FROM CHALLENGING THE JUNE 2025 CASE PLAN WHILE SIMULTANEOUSLY RELYING UPON AND ENFORCING THAT SAME CASE PLAN AS THE BASIS OF FURTHER ORDERS.

{¶ 18} In his first and second assignments of error, Father argues that the juvenile court erred in approving and enforcing the case plan because the case plan was not properly served upon him and the juvenile court subsequently barred Father's challenges to the case plan. Father asserts that (1) he objected to the case plan through his September 18, 2025 Motion for Leave to Appeal/File a Delayed Appeal which the court denied as untimely, (2) he put the juvenile court on notice of the case plan's "disputed factual and procedural validity by filing a written objection to the case plan and proposed psychological evaluations on October 27, 2025," and (3) the juvenile court prohibited any challenges to the case plan during the October 29, 2025 hearing, limiting the proceeding to psychological evaluations. Father's October 27, 2025 "written objection" refers to his "motion to quash or object to the order," filed ostensibly in response to the Agency's motion to court order psychological evaluations.

**A. Whether Father Was Properly Served with the Case Plan and the Timeliness of His Appeal**

{¶ 19} As stated above, the case plan was signed by the parents and the Agency on June 3, 2025, and it was approved and journalized by the juvenile court on June 12, 2025. The court's entry indicates that a copy of the case plan was provided to the parents, and the court's docket states, "Entry filed. Parties served approving case plan." Father states he did not receive the case plan until it was mailed to him by the caseworker on September 16, 2025.

{¶ 20} Civ.R. 58(B) "requires that service be made by the clerk of courts; there is

- 8 -

no stated exception." *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 2015-Ohio-241, ¶ 2. "[W]hen a trial court issues a judgment, it must also issue a directive to the clerk of courts to serve all interested parties and attorneys with that judgment. Pursuant to Civ.R. 58(B), the clerk must then indicate on the docket the names and addresses of the parties it is serving the judgment upon, the method of service, and the costs associated with the service." *Id.* at ¶ 3. "When these steps are followed, there is no question whether service was perfected according to rule." *Id.* Additionally, the time for a party to appeal does not commence until the clerk of courts completes service of notice of the judgment pursuant to Civ.R. 58(B). *Stephens v. Spahn*, 2025-Ohio-4509, ¶ 8 (12th Dist.), citing App.R. (4)(A).

{¶ 21} Here, within the juvenile court's entry, there was no instruction to the clerk of courts to serve the entry in accordance with Civ.R. 58(B). Likewise, while the docket indicates that the parties were served, it does not show the names and addresses of the parties who were served, the method of service, or the costs associated with the service. Because neither the juvenile court's June 12, 2025 entry nor the docket comply with the requirements of Civ.R. 58(B) and *Gator Milford*, the time to appeal the juvenile court's entry approving the case plan did not start to run on June 12, 2025, and Father's appeal is deemed timely under App.R. 4. *See Lazor v. Souders*, 2024-Ohio-774, ¶ 12 (12th Dist.). We ruled as much when we denied the Agency's motion to dismiss Father's appeal as untimely on February 26, 2026.

### B. Creation of a Case Plan

{¶ 22} The procedures for the creation and amendment of a case plan are statutorily mandated. *See* R.C. 2151.412. As pertinent here, R.C. 2151.412(A) provides that the Agency "shall prepare and maintain a case plan for any child to whom the agency is providing services" and "any of the following applies": the Agency filed a dependency

complaint under R.C. 2151.27 and the child is living at home subject to an order for protective supervision. R.C. 2151.412(A)(1) and (3). R.C. 2151.412(E) further provides that when preparing a case plan, the Agency "shall attempt to obtain an agreement among all parties, including . . . the parents . . . regarding the content of the case plan. If all parties agree to the content of the case plan and the court approves it, the court shall journalize it as part of its dispositional order." *Id.* If, however, the Agency "cannot obtain an agreement upon the content of the case plan or the court does not approve it, the parties shall present evidence on the contents of the case plan at the dispositional hearing." *Id.* Thereafter, "[t]he court, based upon the evidence presented at the dispositional hearing and the best interest of the child, shall determine the contents of the case plan and journalize it as part of the dispositional order for the child." Once journalized, a case plan is binding on all parties, including the parents. R.C. 2151.412(F)(1).

{¶ 23} Thus, R.C. 2151.412(E) provides that a juvenile court may approve a case plan and journalize it as part of its dispositional order if all parties have agreed to the case plan's content. The juvenile court did not err in approving the case plan as it was signed by all parties, including Father, indicating their agreement to the case plan's contents.

### C. Procedures for Amending or Objecting to a Case Plan

{¶ 24} "Ohio law does not permit substantive changes to a case plan 'without recourse to the mandatory procedure set out in R.C. 2151.412[(F)](2).'" *In re X.S.*, 2021-Ohio-1774, ¶ 53 (3d Dist.), quoting *In re Townsend*, 2005-Ohio-2473, ¶ 30 (4th Dist.). Pursuant to R.C. 2151.412(F)(2), "[a]ny party may propose a change to a substantive part of the case plan." The party proposing a change to the case plan must file the proposed change with the court and give written notice of the proposed change to all parties and the guardian ad litem. *Id.* In addition, pursuant to R.C. 2151.417(A) and Juv.R. 36(A), the

juvenile court may review at any time a case plan prepared for the child pursuant to R.C. 2151.412.

{¶ 25} Father asserts he objected to the case plan by filing a Motion for Leave to Appeal/File a Delayed Appeal on September 18, 2025, two days after he received the case plan, but the "objection was denied . . . as untimely" by the juvenile court. Contrary to Father's assertion, the juvenile court's September 18, 2025 entry did not deny Father's motion as untimely or otherwise deny Father the right to appeal the entry approving the case plan. Rather, the juvenile court merely observed that it had no authority to extend the time to appeal.

{¶ 26} We question whether Father's motion was an objection to the case plan as contemplated by R.C. 2151.412(F)(2). The motion simply enumerates the many difficult personal circumstances that prevented Father from filing an appeal, asserts that he did not know the case plan was a court order, and states "the documentation" was mailed on September 16, 2025. Even if we construe Father's motion as an objection/proposal to change the case plan's contents, the record does not reflect that Father filed the proposed change with the juvenile court and gave written notice of the proposed change to all parties as required under R.C. 2151.412(F)(2).

{¶ 27} Father also asserts he objected to the case plan and proposed psychological evaluations when he filed his "motion to quash or object to the order" on October 27, 2025, ostensibly in response to the Agency's motion to court order psychological evaluations. Through the motion, Father objected to psychological evaluations for the children and requested that the Agency offer alternatives, such as "school counseling, observation or supportive services [and] more parental support," and generally argued that the case plan included inaccurate, false, misleading, or unsubstantiated statements, thereby rendering it "flawed" and unusable as the basis for

psychological evaluations.

{¶ 28} Construing Father's October 27, 2025 motion as an objection to the case plan, and although it did not request a hearing, we find that Father was afforded an opportunity to be heard on his objections to the case plan and its requirement for psychological evaluations when the juvenile court held a hearing on October 29, 2025. The juvenile court's November 25, 2025 entry specifically states that the court held a hearing "and listened to father's objections." Contrary to Father's assertions, the juvenile court did not limit the hearing to psychological evaluations only. The caseworker testified about the development of the case plan on direct examination, and Father was given the opportunity to inquire and challenge several statements included in the case plan during the caseworker's cross-examination as well as argue for alternatives to psychological evaluations. That the hearing did not proceed as envisioned by Father and the fact that he was prevented from submitting incomplete evidence at the hearing and in post-hearing filings was the direct result of his choosing to represent himself at the hearing and in the proceedings below. A majority of his arguments on appeal likewise indicate a failure to understand court rules and procedures. However, as stated earlier, a pro se litigant is held to the same standard as those represented by counsel. *Whitling v. Whitling*, 2017-Ohio-8197, ¶ 16 (12th Dist.).

{¶ 29} In light of the foregoing, Father's first and second assignments of error are overruled.

### D. Juvenile Court's Failure to Consider Less Intrusive Alternatives to Psychological Evaluations

{¶ 30} Assignment of Error No. 3:

> THE JUVENILE COURT ABUSED ITS DISCRETION BY ORDERING PSYCHOLOGICAL EVALUATIONS WITHOUT FIRST CONSIDERING OR MAKING FINDINGS REGARDLESS LESS INTRUSIVE ALTERNATIVES.

**{¶ 31}** Father argues that the juvenile court abused its discretion by ordering psychological evaluations for the children without first considering less intrusive alternatives identified in the record. Father cites Civ.R. 35 in his reply brief for the proposition that a psychological examination may be ordered only after a judicial determination that the mental condition of a party is in controversy.[2] "Civ.R. 35 allows for the mental and/or physical examination of another party for the purposes of discovery in a civil case upon a showing of good [cause]." *In re Guardianships of Ahmed*, 2003-Ohio-6390, ¶ 11 (7th Dist.). It is therefore not applicable here. Juv.R. 32(A)(3), on the other hand, authorizes a juvenile court to order a mental examination "[w]here a material allegation of a neglect, dependency, or abused child complaint relates to matters that a history or examination may clarify." "The provision for a mental examination under Juv. R. 32 is discretionary with the court." *In re Brown*, 1986 Ohio App. LEXIS 9237, *6 (1st Dist. Nov. 26, 1986). We therefore review a juvenile court's decision regarding an examination under Juv.R. 32 for an abuse of discretion. *In re A.S.*, 2026-Ohio-244, ¶ 86 (6th Dist.).

**{¶ 32}** The juvenile court did not abuse its discretion by ordering enforcement of the case plan requirement for psychological evaluations. Father laments that the court failed to consider less intrusive alternatives before ordering psychological evaluations. The record shows, however, that his October 27, 2025 motion to quash simply listed "Offer Alternatives—such as school counseling observation or supportive services as well as more parental support," and that he never asked the caseworker about less intrusive

---

2. Civ.R. 35(A) provides in pertinent part that when the mental of a party "is in controversy, the court in which the action is pending may order the party to submit himself to a . . . mental examination or to produce for such examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

- 13 -

alternatives to psychological evaluations during the October 29, 2025 hearing. Moreover, Father suggested only two somewhat specific alternatives during the hearing, namely the completion of the IEP and more parental involvement at home. Contrary to Father's assertions, the juvenile court's November 25, 2025 entry did briefly consider these two alternatives but ultimately determined that psychological evaluations were in the children's best interest. In particular, the court noted Father's suggestion "that the family can address the concerns at home," but rejected it on the ground that "the family's lack of follow-up in the past makes this less ideal."

{¶ 33} We find that the caseworker's testimony, as detailed above, amply supports the juvenile court's order for psychological evaluations. The caseworker's testimony detailed the children's behaviors as observed by the caseworker and at school. The caseworker reported the recommendations of the children's teachers, including that absent a diagnosis, beneficial support or resources are unavailable to address Bella's developmentally inappropriate behaviors. The caseworker further noted that the therapy preferred by Father, the school, and the caseworker first requires a psychological evaluation, and she explained that the additional services and resources the family and children may qualify for are based upon the psychological evaluations.

{¶ 34} In its entry, the juvenile court noted that "[n]o one knows what the psychological evaluations will recommend," that "there may be recommendations that the parents can implement at home," and that "it may be that the evaluator will determine that such (or a full psychological evaluation) is not appropriate," in which case "further evaluation should cease." However, the court recognized that "not having a diagnosis, if appropriate, and failing to provide the resulting services would be a disservice," and that "at the risk of failing to provide necessary or beneficial services to the children that are only available after a psychological evaluation, the Court finds that psychological

evaluations should occur as being in the children's best interest. As for the parents, their behavior in this case as well as their history point to the necessity for psychological evaluations."

{¶ 35} In light of the foregoing, Father's third assignment of error is overruled.

**E. Denial of Father's Request for a Continuance to Retain Counsel**

{¶ 36} Assignment of Error No. 4:

THE JUVENILE COURT ABUSED ITS DISCRETION AND VIOLATED DUE PROCESS BY DENYING APPELLANT'S REQUEST FOR A CONTINUANCE TO OBTAIN COUNSEL WHILE HOLDING APPELLANT TO ATTORNEY-LEVEL PROCEDURAL STANDARDS.

{¶ 37} Father argues that the juvenile court erred by denying his motion for a continuance to retain counsel and subsequently declining to consider evidentiary materials he submitted after the conclusion of the October 29, 2025 hearing. Father asserts that "[w]hile pro se litigants must generally follow procedural rules, courts may not enforce those rules in a manner that deprives a parent of fundamental fairness."

{¶ 38} The decision whether to grant or deny a motion for continuance is within the juvenile court's sound discretion. *In re T.W.*, 2017-Ohio-8268, ¶ 23 (12th Dist.). Pursuant to Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." In making such determination, the juvenile court should consider the length of the delay requested, the inconvenience to other litigants, witnesses, opposing counsel, and the juvenile court, whether the requested delay is for a legitimate reason or dilatory and contrived, whether the requesting party contributed to the circumstances giving rise to the request, and any other factor relevant to the particular facts and circumstances of the case. *In re T.W.* at ¶ 23.

{¶ 39} The juvenile court did not abuse its discretion by denying Father's motion to continue the October 29, 2025 hearing while it was in progress so that he could retain

counsel, and by declining to consider evidentiary materials submitted by Father several weeks after the hearing. Father had sufficient time to retain an attorney before the hearing but never retained one. The hearing was already 80 minutes in progress when Father made his motion. Additionally, the record shows that Father had been repeatedly told and encouraged by the juvenile court and its staff to retain counsel or apply for appointed counsel, which he refused to do.

{¶ 40} For example, the juvenile court's September 18, 2025 entry advising Father it did not have the authority to grant a request to file an appeal past timelines also indicated that the court could "appoint counsel to assist in filing whatever relief may be available. Father and/or mother if desired, must file an affidavit of Indigency with this Court." This is also illustrated by the juvenile court's several statements during the hearing reminding Father that "my staff has told you several times and we've sent you paperwork for an attorney," "you kept saying you were going to get your own and what I'm seeing today is part of the reason why you really could use an attorney," "we've been telling for months sir that it might behoove you to have an attorney, even a court-appointed attorney," and "we've offered you an attorney for months."

{¶ 41} When Father moved to continue the hearing to retain counsel, the juvenile court denied the motion, stating, "Sir. We've offered a court appointed attorney for months. You can hire an attorney at any time. No, I'm not continuing the matter," and "when I have somebody that doesn't know how to act in court as you've just said, they really need to get an attorney. And that's why in these cases you're provided a court appointed attorney that we have offered a dozen times probably."

{¶ 42} Although Father was free to do so, "it is axiomatic that one who acts as his own attorney does so at his own peril." *C.W. v. J.S.*, 2022-Ohio-1951, ¶ 36 (10th Dist.). It is well established that pro se litigants are held to the same standard as litigants who are

- 16 -

represented by counsel. *Jones v. Nichols*, 2012-Ohio-4344, ¶ 23 (12th Dist.). As a result, pro se litigants are presumed to have knowledge of the law and correct legal procedures, and are expected, as attorneys are, to abide by the relevant rules of procedure and substantive laws, regardless of their familiarity with them. *Stiles v. Hayes*, 2015-Ohio-4141, ¶ 18 (12th Dist.); *In re J.A.M.,* 2011-Ohio-668, ¶ 17 (12th Dist.). In other words, "[p]ro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure." *Cox v. Zimmerman*, 2012-Ohio-226, ¶ 21 (12th Dist.). The time for Father to submit his evidence was during the hearing when the Agency could have responded to it.

{¶ 43} Father's fourth assignment of error is overruled.

### F. Juvenile Court's Alleged Reliance on a Semi-Annual Administrative Review

{¶ 44} Assignment of Error No. 5:

THE JUVENILE COURT ERRED BY RELYING ON SPECULATIVE AND DEMEANOR-BASED FINDINGS UNSUPPORTED BY COMPETENT, CREDIBLE EVIDENCE WHILE EXCLUDING APPELLANT'S EVIDENCE.

{¶ 45} Appellant summarily argues that the juvenile court improperly relied on a semi-annual administrative review ("SAR") "that was not finalized at the time of the administrative meeting and was materially altered thereafter."

{¶ 46} The record shows that the SAR was conducted on October 30, 2025, that both parents signed the document, and that it was approved by and filed in the juvenile court on November 10, 2025. Father subsequently filed a "Rebuttal and Correction" as well as a motion for clarification and/or correction of the SAR. On November 25, 2025, the juvenile court issued an entry declining to "modify the administrative document or set the matter for a hearing or entertain any further requests regarding the SAR." The court found that "the SAR does not attempt to modify the Case Plan approved by this Court in

June of 2025. As such, the Court should not be involved."

{¶ 47} Father's appeal challenges the juvenile court's November 25, 2025 entry granting the Agency's motion to court order psychological evaluations for the parents and children. The entry makes no reference to the SAR. Additionally, there was no testimony regarding the SAR during the October 29, 2025 hearing, and no documentation from the SAR was either submitted or admitted into evidence. As Father aptly acknowledges in his reply brief, the SAR "did not yet exist" on October 29, 2025. As there is nothing in the record showing or suggesting that the juvenile court relied on the SAR in its November 25, 2025 entry ordering the parents and the children to submit to psychological evaluations, Father's fifth assignment of error is overruled.

{¶ 48} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Preble County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*